IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 23–cv–00111–MDB

CARL FOGEL,

    Plaintiff,

v.

SHELTER MUTUAL INSURANCE COMPANY, a foreign insurance company,

    Defendant.

## ORDER

This matter is before the Court on the Defendant Shelter Mutual Insurance Company's Motion for Summary Judgment (["Defendant's MSJ"], Doc. No. 15) and Plaintiff's Motion for Summary Judgment (["Plaintiff's MSJ"], Doc. No. 17). (collectively the "Cross-Motions") Each party has responded to the opposition's motion (Doc. No. 16; Doc. No. 23) and replied in support of their Motion (Doc. Nos. 22; 24). Additionally, at the request of the Court, each party filed a supplemental brief (Doc. Nos. 31; 32), and the Court heard oral argument on the Cross-Motions on March 18, 2024. Having considered the parties' briefs, oral arguments, and the relevant law, the Court **GRANTS in part and DENIES in part** Plaintiff's MSJ and **DENIES** Defendant's MSJ.

### STATEMENT OF THE CASE

The following facts are undisputed unless otherwise noted. This case arises from an accident on March 29, 2021, in which a vehicle driven by John Catalano struck Plaintiff while

riding his bicycle. (Doc. No. 17-1.) Mr. Catalano was driving a 1997 Ford Ranger at the time of the accident. (*Id.* at 3.) Plaintiff was injured as a result of the accident. (Doc. No. 14 at 3.) At the time of the accident, Mr. Catalano was the "named insured" on three auto insurance policies issued by Defendant and an "additional insured" on another. (Doc. No. 2 at ¶ 8.) Mr. Catalano was a named insured on (1) policy number 05-01-10313084-8 ["Policy 8"], which covered the 1997 Ford Ranger he owned and was driving at the time of the accident (Doc. No. 22 at 3); (2) policy number 05-01-10313084-5 ["Policy 5"], which covered a 2009 Buick Lacrosse owned by Mr. Catalano (Doc. No. 15-1; Doc. No. 22 at 2, 3.); and (3) policy number 05-01-10313084-9 ["Policy 9"], which covered a 2005 Chrysler PT Cruiser owned by Mr. Catalano's grandson Santino Pusedu.[1] (Doc. No. 14 at 3; Doc. No. 15-3; Doc. No. 22 at 2, 3.) Mr. Catalano was an additional insured on policy number 05-01-10313084-10 ["Policy 10"], which covered a 2016 Ford Transit Connect owned by Mr. Pusedu. (Doc. No. 14 at 3; Doc. No. 15-4; Doc. No. 22 at 2, 3–4.)

On February 1, 2022, Pursuant to Colo. Rev. Stat. § 10-3-1117, Plaintiff submitted requests for information on Mr. Catalano's auto insurance policies to Defendant's registered agent at the time, the Colorado Division of Insurance. (Doc. No. 14 at 4.) Plaintiff contends he submitted a separate request for all four policies associated with Mr. Catalano. (Doc. No. 24 at 4; Doc. No. 17-4 (showing four copies of completed Colorado Division of Insurance Automobile Insurance Liability Policy Disclosure Requests).) Defendant admits to receiving requests for Policy 8 (the 1997 Ford Ranger) and Policy 9 but denies receiving any request as to Policies 5 or 10. (Doc. No. 23 at n. 1; Doc. No. 24 at 10; Doc. No. 23-3 at 1.) On February 7, 2022, Defendant

---

[1] Mr. Pusedu lived with Mr. Catalano at the time of the accident. (Doc. No. 22 at 2.)

disclosed Policy 8 to Plaintiff. (Doc. No. 14 at 4.) In its letter, Defendant's agent Jeffrey Jacke reported that Defendant had "enclosed information for each known policy of insurance of" Mr. Catalano. (Doc. No. 17-6.) However, the disclosure did not include policy information for Policies 5, 9, or 10, which were not disclosed to Plaintiff until initial disclosures in this case on February 23, 2023. (Doc. No. 24 at 5; Doc. Nos. 15-1; 15-2; 15-3; 15-4.) Plaintiff's underlying claim was eventually settled, with a $100,000 contribution from Defendant, the limit of Policy 8. (Doc. No. 22 at 5.)

Plaintiff initiated this action in Pueblo County Court on December 19, 2022. (Doc. No. 5.) Defendant timely removed the action to federal court on January 13, 2023. (Doc. No. 1.) In his Complaint, Plaintiff brings three claims under Colo. Rev. Stat. § 10-3-1117. (Doc. No. 5 at 5–7.) Plaintiff claims Defendant's failure to disclose policy information regarding Policy 5, 9, and 10 within 30 days of his purported requests violated Colo. Rev. Stat. 10-3-1117. (*Id.*) Plaintiff contends he is entitled to damages "in an amount of one hundred dollars per day beginning with and including the thirty-first day following the receipt of" his requests for information on each policy. (*Id.*)

## LEGAL STANDARD

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir.

1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (quoting *Anderson*, 477 U.S. at 251–52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal−Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the [nonmovant], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## ANALYSIS

The Parties have filed Cross-Motions for summary judgment. For its part, Defendant argues it was not under any duty to disclose information regarding Policies 5, 9, or 10 under Colo. Rev. Stat. § 10-3-1117 and thus cannot, as a matter of law, be liable for damages under the

4

statute's penalty provision. (Doc. No. 15 at 7–9.) Meanwhile, Plaintiff argues the exact opposite: that Defendant indeed had a duty to disclose information about Policies 5, 9, and 10 and the failure to disclose entitles Plaintiff to damages. (Doc. No. 17 at 7–15.)

I.      **Disclosure Requirement Under Colo. Rev. Stat. § 10-3-1117(2)(a)**

An insurance company's disclosure requirement under Colo. Rev. Stat. § 10-3-1117 is governed by subsection 2(a) This subsection reads in relevant part:

> (2)(a) Each insurer that provides ... **personal automobile liability insurance coverage** to pay all or a portion of a pending or prospective claim shall provide to the claimant or the claimant's attorney[,] ... **within thirty calendar days after receiving a written request** from the claimant or the claimant's attorney, which request is sent to the insurer's registered agent, **a statement setting forth the following information with regard to each known policy of insurance of the named insured**, including excess or umbrella insurance, **that is or may be relevant to the claim**:
> (I) The name of the insurer;
> (II) The name of each insured party, as the name appears on the declarations page of the policy;
> (III) The limits of the liability coverage; and
> (IV) A copy of the policy.

Colo. Rev. Stat. § 10-3-1117(2)(a) (emphasis added).

Plaintiff emphasizes the statute not only requires the disclosure of policies that *are* relevant to the claim—which Plaintiff argues requires expansive disclosure in and of itself—but also those that *may be* relevant to the claim. (Doc. No. 17 at 7–14.) And, according to Plaintiff, the plain language of "C.R.S. § 10-3-1117 establishes [an] exceptionally expansive definition" of what an insurance company must disclose to an inquiring injured third party. (*Id.* at 9.) Additionally, Plaintiff argues that the intent behind Colo. Rev. Stat. § 10-3-1117 is to promote "transparency in the insurance claims process" and notes the General Assembly declared that "it is important that the citizens of this State have accurate and reliable information about the

amount of legal liability coverage available for a claim." (*Id.* at 14.) Plaintiff says Defendant's decision to "to conduct its own policy analysis" and refusal to disclose information on Policies 5, 9, and 10 was contrary to the spirit of the statutory scheme and is thus in violation of the scheme. (*Id.* at 15.)

For its part, Defendant contends it was only required to disclose Policy 8 because that policy insured the vehicle involved in the accident—the 1997 Ford Ranger. Defendant argues that an auto policy that does not cover the vehicle involved in an accident—even if the policy is held by the driver involved in the accident—simply "could not be relevant to the claim," and thus falls outside of Colo. Rev. Stat. 10-3-1117's disclosure requirements. (Doc. No. 15 at 8–9.) Defendant further argues the statute "is not intended to provide a claimant with all policies of insurance that exist" (*id.* at 9) and "there is other language [the General Assembly] could have employed" had it intended to require disclosure as broad as implored by Plaintiff. (Doc. No. 32 at 4.)

The parties agree that no State of Colorado court, nor court in this District, has analyzed the scope of the disclosure requirement in Colo. Rev. Stat. 10-3-1117.[2] (Doc. Nos. 31; 32.)

"Statutory interpretation is a matter of law appropriate for resolution on summary judgment." *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011). The

---

[2] In *Fischer v. Allstate Fire & Cas. Ins. Co.*, the court and parties appear to have presumed, without analysis, that Colo. Rev. Stat. 10-3-1117 requires an insurance company "to provide information regarding *each* known policy of insurance of the named insured." No. 22-CV-02267-NYW-STV, 2023 WL 3464404, at *3 (D. Colo. May 15, 2023) (emphasis added) (saying there was "no dispute between the Parties that the statutory language of § 10-3-1117(2)(a) clearly contemplates" this scope of disclosure). The Court takes note of the *Fischer* decision, but because *Fischer* was focused on a different part of the statutory scheme and did not specifically analyze the provision at issue here, the Court finds it only tangentially relevant to its analysis.

6

Court "appl[ies] Colorado law in determining how best to interpret a Colorado statute in a case [like this one] resting on diversity jurisdiction." *Allen v. United Servs. Auto. Ass'n*, 907 F.3d 1230, 1237 (10th Cir. 2018); *see Par. Oil Co. v. Dillon Cos.*, 523 F.3d 1244, 1248 (10th Cir. 2008) ("As we are sitting in diversity and construing a Colorado statute, we must give it the meaning it would have in the Colorado courts."). "Under Colorado law, the 'primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent.'" *Allen*, 907 F.3d at 1237 (quoting *Lewis v. Taylor*, 375 P.3d 1205, 1209 (Colo. 2016)). "To do so, [the Court] look[s] to the plain meaning of the statutory language and consider[s] it within the context of the statute as a whole." *Lewis*, 375 P.3d at 1209 (citing *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011)). If the statutory language is clear, the Court applies it as such without "resort[ing] to other rules of statutory construction." *People v. Triantos*, 55 P.3d 131, 134 (Colo. 2002). However, "if the statutory language has more than one reasonable meaning, and is therefore ambiguous, [the Court] may look to interpretive aids to construction to resolve the ambiguity and determine which of the reasonable interpretations is appropriate."[3] *Lewis*, 375 P.3d at 1209. "In evaluating whether a statute is ambiguous, [the Court] do[es] not read its words or phrases in isolation, but instead read[s] them in context and in a manner that gives effect to the statute as a whole." *Id.*

At the outset, the Court notes the statutory scheme does not define the word "relevant" nor the phrase "is or may be relevant." *See* Colo. Rev. Stat. § 10-3-1102. Under such conditions, the Court turns to the common meaning of the word and phrase. *See* Colo. Rev. Stat. § 2-4-101

---

[3] In addition to the rules of statutory construction, such interpretive aids include "legislative history, the consequences of a given construction, and the end to be achieved by the statute." *Klinger v. Adams Cty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo. 2006).

("Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). In common parlance, to be relevant is to have "significant and demonstrable bearing on the matter at hand." *Relevant*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/relevant (last visited March 27, 2024).[4] Thus, Colo. Rev. Stat. § 10-3-1117 requires the disclosure of policies that have, or may have, a significant and demonstrable bearing on the claim at hand.

The question then becomes, when does a policy have a significant and demonstrable bearing on the claim at hand? Defendant contends the policy will only have bearing on a claim if it provides coverage. (Doc. No. 15 at 8–9.) Perhaps. But what if there is a dispute as to coverage—who makes that determination? And how can an insurer know whether there will be a dispute as to coverage unless the insurer discloses the policy information and gives the claimant an opportunity to analyze it for him or herself? And what if a claimant has already obtained sufficient information about the policy to determine there is indeed coverage? Can the insurer still withhold based on its own conclusion that there is no coverage? The parties agree on this much: the answer to these and other questions are not in the statute itself. Thus, the Court finds it appropriate to consider "the end to be achieved by the statute." *See Klinger*, 130 P.3d at 1031

---

[4] Plaintiff urges the Court to adopt the definition ascribed to "relevance" in the context of litigation, and more specifically, discovery. (Doc. No. 17 at 10–11.) However, the use of the word "relevance" in active litigation is loaded with inapplicable procedural and substantive considerations.

8

("[W]here the language is ambiguous we rely on other factors such as legislative history, the consequences of a given construction, and the end to be achieved by the statute.").

In enacting the relevant statutory scheme, the General Assembly made its purpose quite clear:

> It is in the best interests of the citizens of this state to have **transparency in the insurance claims process** to further the public policy of **encouraging settlement and preventing unnecessary litigation**. Claimants and injured parties should **fully** understand the total amount of insurance coverage available to them.... [I]t is important that the citizens of this state have accurate and reliable information about the amount of legal liability coverage available for a claim.

Colo. Rev. Stat. § 10-3-1101(2). Thus, the statutory scheme at issue is intended to protect citizens, encourage settlements, and prevent unnecessary litigation, all by requiring insurance companies to be transparent.

Further, and as noted by Plaintiff during oral argument, when a claimant understands a tortfeasor to hold multiple insurance policies but is stonewalled by the insurance company in his or her attempt to review those policies, the settlement waters can be muddied. Claimants who understand there *may* be additional coverage available to them but lack a clear understanding of the exact scope or ultimate availability of said coverage are disincentivized to settle claims and incentivized to litigate, if only to "fully understand the total amount of insurance coverage available to them." Colo. Rev. Stat. § 10-3-1101(2). Indeed, those settlement incentives and disincentives are precisely what the General Assembly had in mind when it enacted this statute. *See id.* And "[a]s a matter of public policy, the law favors and encourages settlements." *Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F.Supp.2d 1216, 1229 (D.Colo. 2001)). Moreover, broad disclosure is not burdensome for an insurance company because it is merely required to transmit information it already has on file. If anything, broad disclosure could be more efficient for an

9

insurance company because the burden of making a first determination as to coverage shifts to the claimant.

Defendant makes colorable arguments but they are not persuasive against the backdrop of the General Assembly's legislative declaration. If the Court were to adopt Defendant's narrow interpretation, it would cut against the General Assembly's express desire to promote transparency and settlement. In contrast, Plaintiff's broad interpretation aligns with the express statutory purpose and promotes transparency. Specifically, the Court agrees with Plaintiff that under these particular (and unique[5]) circumstances, Colo. Rev. Stat. § 10-3-1117(2)(a) required Defendant to disclose the policies at issue. This is because it was at least plausible that one or more of the policies could have a significant and demonstrable bearing on the claim at hand.[6]

This interpretation is further supported by the plain language of the statute, which expressly requires disclosure of "excess or umbrella insurance" but does not limit disclosure to only excess and umbrella insurance. Instead, it requires disclosure of "each known policy of insurance of the named insured, *including* excess or umbrella insurance." Colo. Rev. Stat. § 10-3-1117(2)(a). "[T]he word include does not ordinarily introduce an exhaustive list," but rather "connotes simply an illustrative application of the general principle." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132 (2012); *Fed. Land Bank of St. Paul*

---

[5] Defendant, by its own admission during oral argument, organizes its policies in a manner outside of industry norm. Defendant assigns a policy number to *each vehicle* it insures. However, based on the parties' oral arguments, the Court understands the industry norm is to assign policy numbers to *policyholders*.

[6] At this point, there is no dispute the policies did not provide coverage. However, at the time of the request Plaintiff had no way of knowing that, and the overlap in named insured and property type was sufficient to bring the policies within the ambit of "*may be* relevant." Colo. Rev. Stat. § 10-3-1117(2)(a).

*v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941). In other words, by using the non-exhaustive word, "including," the General Assembly necessarily intended to incorporate more than what is expressly stated in the statute.[7]

Because the circumstances of this case are unique, *see supra* n. 5, the Court cannot say this interpretation would apply to other cases, but it does pause to note that Defendant's refusal to disclose policies here, appears to be precisely what the General Assembly sought to discourage and indeed, disallow. Defendant unnecessarily withheld policies that—while ultimately inapplicable in terms of coverage[8]—would have given Plaintiff a better and indeed "full[er] understand[ing] of the total amount of insurance coverage available to [him]." Colo. Rev. Stat. § 10-3-1117(2)(a). Defendant's refusal is precisely the type of behavior that leads to more litigation, and in fact led to *this* particular litigation. Accordingly, the Court finds Defendant's refusal to disclose the three additional policies at issue was a violation of Colo. Rev. Stat. § 10-3-1117(2)(a).

## II.  Damages

Plaintiff next argues that to the extent Defendant was required to but failed to disclose information on Policies 5, 9, and 10, Plaintiff is owed damages under the Colo. Rev. Stat. § 10-3-1117 penalty provision, which provides:

> An insurer that violates this section is liable to the requesting claimant for damages in an amount of one hundred dollars per day, beginning on and including

---

[7] During oral argument Defendant suggested the statute was enacted to require disclosure of umbrella policies and not additional policies like the ones at issue here. However, Defendant did not offer support for that proposition, and as noted above, the express terms of the statute appear to contradict that proposition.

[8] During oral argument and in his briefing Plaintiff has conceded Policies 5, 9, and 10, do not ultimately provide coverage for the accident. (Doc. No. 17 at ¶ 14.)

> the thirty-first day following the receipt of the claimant's written request. The penalty accrues until the insurer provides the information required by this section. An insurer that fails to make a disclosure required by this section is also responsible for attorney fees and costs incurred by a claimant in enforcing the penalty.

Colo. Rev. Stat. 10-3-1117(3).

According to Plaintiff, "the statutory penalty [for Policies 5, 9, and 10] began accruing on March 4, 2022, and 356 days passed until the required policy information disclosures were made in this litigation on February 23, 2023." (Doc. No. 17 at 16.) Plaintiff contends that at 356 days * $100 per day * 3 separate statutory violations, he is owed $106,800.00 plus costs, attorney fees, and accrued interest. (*Id.*)

For its part, Defendant denies ever receiving requests as to Policies 5 and 10 and therefore says there are material facts in dispute as to the amount of damages owed, precluding summary judgment. (Doc. No. 17 at 2–3, 7–8.)

Plaintiff responds by arguing "C.R.S. § 10-3-1117 only requires service upon the registered agent of the insurer," and thus, the evidence Plaintiff presents of service to the Colorado Division of Insurance (Defendant's registered agent during the relevant period) is sufficient to determine damages regardless of whether Plaintiff's requests actually made it to Defendant itself. (Doc. No. 24 at 6–7; *see* Doc. No. 24-1.) Plaintiff cites *Fischer* for the proposition that Colo. Rev. Stat. § 10-3-1117's penalty clock is triggered upon service of a disclosure request to the insurance company's registered agent. (*Id.* at 6.) However, *Fischer* did not directly analyze this issue. 2023 WL 3464404. In *Fischer*, the court considered whether Colo. Rev. Stat. § 10-3-1117's penalty clock could be triggered by a claimant who directly contacts the insurance company regarding disclosure, rather than the insurance company's

12

registered agent. *Id.* The *Fischer* court did not, however, consider whether the penalty clock starts to run when the registered agent receives the disclosure request, nor did it consider whether penalties apply when a registered agent fails to transmit a disclosure request to the insurance company—as Defendant alleges happened here. *Id.*

The Court finds the arguments on this issue underdeveloped.[9] For example, Plaintiff appears to assume, without providing a basis, that the damage provision applies to each unanswered request—in other words, that Defendant committed three disclosure violations. (*See, e.g.*, Doc. No. 17 at 15–16.) But it seems at least possible that the General Assembly would have aggregated Defendant's actions into just one violation, as they arose out of a single course of conduct and involved the same insured.[10] Similarly, Defendant provides no explanation for its conclusory assertion that it never received the requests on Policies 5 and 10, nor does it address Plaintiff's evidence that CDI received and passed along those requests. Defendant also provides little, if any, support for its contention that the penalty clock was triggered only when Defendant itself received requests, not when its registered agent received requests.[11] (Doc. No. 23 at 7–8.)

---

[9] Not unsurprisingly, the parties focused most of their briefing the statute's disclosure requirements. They spent little time discussing damages, devoting approximately four pages total to the issue. (*See* Doc. No. 17 at 15–16; Doc. No. 23 at 7–8; Doc. No. 24 at 10.) The Court recognizes page limits severely constrain a party's ability to address all issues equally. It does not fault the parties for brevity as to damages, it merely notes the issue needs further analysis.

[10] Particularly so in light of industry norms for organizing policies, which is likely what the General Assembly had in mind when enacting this statutory scheme. *See supra* n. 5.

[11] The Court is skeptical of the argument that service on a registered agent is insufficient.

A court can only enter summary judgment in favor of a "movant bearing the ultimate burden of proof at trial" when the movant "satisfy[ies] both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim by showing that it would be entitled to a directed verdict at trial." *Stat-Tech Liquidating Trust v. Fenster*, 981 F.Supp. 1325, 1335 (D.Colo. 1997); William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477–78 (1991). Courts routinely enter *partial* summary judgment in favor of plaintiffs when they satisfy their burden with respect to liability but not damages. *See, e.g.*, *Boyer v. Celerity Sols. Grp., LLC*, 482 F. Supp. 3d 1122 (D. Colo. 2020). Here, Plaintiff has satisfied his burden of showing he is entitled to summary judgment as to Defendant's liability for a statutory violation, but the Court lacks enough information to enter summary judgment with respect to damages. Said another way, the Court is hesitant to specify an actual award amount, without more information.

Nevertheless, the Court is of the view that damages—like liability—can be and should be resolved as a matter of law, and for that reason the Court will grant Plaintiff leave to file a second and much more limited summary judgment motion. *See Martin v. Baptist Richmond Health*, No. 5:20-CV-00443-GFVT, 2022 WL 21908819, at *1 (E.D. Ky. July 7, 2022) ("[C]ourts have discretion to permit parties to amend their requests for summary judgment when briefing is insufficient, this is generally done by way of denying the original motion without prejudice[.]").

**CONCLUSION**

For the foregoing reasons, it is

14

**ORDERED** that Defendant Shelter Mutual Insurance Company's Motion for Summary Judgment (Doc. No. 15) is **DENIED**. It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 17) is **GRANTED in part and DENIED in part** as follows:

1. The Motion is **granted** to the extent Plaintiff contends Defendant violated the disclosure requirements set forth in Colo. Rev. Stat. § 10-3-1101(2).

2. The Motion is **denied without prejudice** to the extent Plaintiff seeks a specified damage award under Defendant's Colo. Rev. Stat. § 10-3-1101(3) in connection with Defendant's lack of disclosure.

It is further

**ORDERED** that on or before May 1, 2024, Plaintiff shall file a second motion for summary judgment addressing the issue of damages. The motion shall not exceed six (6) pages. Defendant shall file a response of no more than eight (8) pages and Plaintiff's reply shall not exceed two (2) pages.

Dated this 31st day of March, 2024.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge